UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-2108 JRT/FLN

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>Petitioner,   )<br>)<br>v.   )<br>)<br>DELANO KOSKI,   )<br>)<br>Respondent.   ) | **REPORT AND RECOMMENDATION** |

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 31, 2004, on Petitioner's Petition to Determine Present Mental Condition of An Imprisoned Person Under 18 U.S.C. § 4245 [#1]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636. For the reasons that follow, this Court recommends that Petitioner's petition be granted.

## I.  BACKGROUND

Respondent Delano Koski ("Koski") is a 64 year old divorced male serving a 30 month sentence for mailing threatening communications. (Ex. A; Ex. B.) On or about February 26, 1996, a United States District Court found Respondent incompetent to stand trial. (Ex. D at MR 0000342.) He was transferred to FMC Rochester where his competency was restored through inpatient mental health treatment that included administration of the antipsychotic medication, risperidone. (Ex. B.) Despite his return to competency, Koski was diagnosed with a "major mental illness . . . Delusional disorder: Persecutory type." (Ex. D at MR_0000347.) Moreover, upon his discharge, it was predicted that he would remain competent so long as he continued drug therapy. (Id., at MR_0000348.)

On September 28, 2004, Koski was readmitted as an inmate at FMC Rochester. Since his arrival at FMC Rochester Koski has shown symptoms of mental illness. (Ex. B; Ex. D at MR_0000114, MR_0000115.) He has expressed somatic delusions, which are fixed false beliefs that he suffers from a medical disease or defect. According to Dr. Sigurdson, these somatic delusions are intertwined with his persecutory delusions, which, in this case, are additional fixed false beliefs that hold various government agencies responsible for his false medical conditions. (See Ex. B.) Koski claims that his back was crushed and his lungs scarred as a result of his duties in the armed services and chemical testing by that service. (Ex. B; Ex. D at MR_0000112, 329.) Medical tests, including x-rays, however, show that he has never suffered a crushed back or scarred lungs. Despite Koski's complaints, "after multiple evaluations and reevaluations by medical staff, no underlying medical pathology was found." (Ex. D at MR_00000114.)

In addition to persecutory and somatic delusions, Koski has a false fixed belief in the reason for his current incarceration. While many prisoners believe they are innocent victims of the government, Koski believes that he was never convicted and believes that his current incarceration is for the purpose of obtaining a medical evaluation. (Ex. B; Ex. C at CF_0000052 & 56; Ex. D at MR_0000065-66, 88-90, 92.) As a result, on multiple occasions, Koski has requested a complete medical evaluation despite having previously received an evaluation. (Ex. B.)

Koski's delusions have impaired his ability to function in the general population. On July 7, 2005, Koski was transferred to the general population of the mental health unit. (Ex. D at MR_0000007.)[1] While the conditions in the outpatient unit do not significantly differ from the conditions in the general

---

[1] The general population is also known as the work cadre.

2

population, Koski decompensated during his stay in the general population.[2] On July 27, 2005, Koski threatened to commit suicide. (Ex. B, Ex. D at MR_0000007, 74 & 92.)

After this incident Koski was returned to the outpatient unit of the mental health hospital, where he is currently housed. (Ex. B.) After returning to the outpatient unit, Koski showed signs of improvement. (Ex. B.) As a result, on October 25, 2005, Dr. Sigurdson told Koski that she was considering calling off the 18 U.S.C. § 4245 hearing, which was scheduled for October 31, 2005. (Ex. H.) Koski became irrationally agitated and angry stating that he would not accept any treatment without a judge's order. (Ex. H.) In addition, he expressed suicidal and violent ideation stating "How will you feel if you hear I went Mc Veigh?" (Ex. H.)

During his testimony, Koski exhibited some of the delusions identified by Dr. Sigurdson. Koski testified that had he known that Dr. Daniel Shine, a Staff psychiatrist at FMC Rochester, had recommended that he receive mental health treatment including medication, he would have agreed to it. The contemporaneous medical records, however, report that Koski initially agreed to take the medication recommended by Dr. Shine; however, about one week later, he refused the medication and stopped taking it. (Ex. D at MR_0000108, 115, 158, 161, 172.) He has not taken psychotropic medication since that refusal.

On September 12, 2005, pursuant to 18 U.S.C. § 4245, the United States petitioned to involuntarily commit Koski. (Ex. A.) On October 31, 2005, the petition came on for hearing before the undersigned Magistrate Judge at FMC Rochester. Kurt Glaser, Esq. represented Respondent, who was present during the hearing. Assistant United States Attorney Lonnie F. Bryan appeared on behalf of the

---

[2]The outpatient unit is also referred to as Diagnosis and Observation Unit, which is abbreviated in the medical records as DO.

United States. Dr. Christine Sigurdson M.D., a psychiatrist, and Koski testified.

## II.   CONCLUSIONS OF LAW

A federal inmate may be involuntarily transferred to a mental hospital for care and treatment with the prisoner's consent or a court order. 18 U.S.C. § 4245. Absent consent of the inmate, the court must order a hearing to determine whether Petitioner can prove, by a preponderance of the evidence, that the inmate is "presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(d). If Petitioner can prove these three elements the court shall authorize an involuntary transfer. Id. If the transfer is approved, the Attorney General shall hospitalize the person for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier. 18 U.S.C. § 4245(d). Consequently, the Court is required to answer three questions: "Is the Respondent suffering from a mental disease or defect? If so, is the Respondent in need of custody for care or treatment of that disease or defect? If so, is the proposed facility a suitable facility?" United States v. Horne, 955 F.Supp. 1141, 1144 (D.Minn.1997). The Court finds that the United States has met its burden of proving each of the foregoing elements.

### A.   Koski has a Mental Disease or Defect.

Dr. Sigurdson, a psychiatrist, has diagnosed Koski as having a delusional disorder that impairs his ability to function in the general population of the mental health hospital. Dr. Sigurdson's diagnosis is uncontested by reliable expert evidence. She based her diagnosis on Koski's current condition and a review of Koski's medical history. Dr. Sigurdson's review of Koski's medical history includes her treatment of him in 1996 after he was ruled incompetent to stand trial. This Court finds that Koski presently suffers from a mental illness. The finding is further supported by Koski's medical history, as noted above.

Koski's medical history is consistent with his present condition and the opinion of Dr. Sigurdson that he suffers from a mental illness. Therefore, a preponderance of the evidence satisfies this element of the United States' burden of proof.

**B.      Respondent is in Need of Custody for Treatment of his Mental Illness.**

18 U.S.C. § 4245(d) does not define when a prisoner is "in need of custody for care or treatment." Courts have found that prisoners are "in need" of "treatment under 18 U.S.C. § 4245 where a diagnosis is properly supported by psychological or psychiatric testimony." United States v. Washington, 2005 WL 1277778 *3 (citing Horne, 955 F. Supp. at 1146); see also United States v. Eckerson, 299 F.3d 913, 914 (8th Cir.2002)(applying the legal standard for determining when an inmate is in need of treatment adopted in Horne). Likewise, a finding of dangerousness will prove that "treatment is needed within the meaning of 18 U.S.C. § 4245." Horne, 955 F. Supp. at 1149.

Koski is currently housed in the outpatient unit of the mental health hospital. He is refusing all mental health treatment and fails to comprehend that help is available in the form of mental health treatment. He is in the outpatient unit because, as Dr. Sigurdson testified, Koski was unable to function within the general population of the mental health unit. Within 20 days of his transfer to the general population, Koski threatened to commit suicide. (Ex. B, Ex. D at MR_0000007, 74, 92.) Although he has since been returned to the outpatient unit, his functioning remains severely impaired by his mental illness.

After returning to the outpatient unit, Koski showed signs of improvement. As a result, on October 25, 2005, Dr. Sigurdson told Koski that she was considering calling off the 18 U.S.C. § 4245 hearing, which was scheduled for October 31, 2005. Koski became irrationally agitated and angry stating that he would not accept any treatment without a judge's order. (Ex. H.) In addition, he expressed suicidal and violent ideation stating "How will you feel if you hear I went Mc Veigh?" (Ex. H.) Consequently, despite

5

some improvement while housed in the outpatient unit, Koski has continued to need treatment.

While Koski's testimony suggested that he would consent to the proposed treatment, he previously consented to such treatment and shortly thereafter refused it when as part of his treatment his delusions were questioned. (Ex. B; Ex. D at MR_0000006-7.) Moreover, Koski's consent was based on his delusion that he has post traumatic stress disorder from the government's persecution of him. Therefore, the Court finds that he is likely to repeat his refusal of mental health treatment absent issuance of an order.

In addition to Koski's inability to function in a general prison population, commitment for treatment may allow Koski to leave FMC Rochester and enter a halfway house as early as January 2006, rather than serving his entire sentence of imprisonment. According to Dr. Sigurdson, even while in the outpatient section of the mental health unit Koski is so cognitively impaired by his delusions that he is unable to meaningfully participate in release preparation. When discussing his anticipated release, he expressed suicidal and violent ideation stating "How will you feel if you hear I went Mc Veigh?" (Ex. H.) Moreover, even if a halfway house placement is unavailable, inpatient treatment will assist Koski in complying with the conditions of his supervised release, which require that he participate in mental health treatment and take the prescribed medications. (Ex. A.) As a result, Koski will likely benefit from a commitment to the inpatient unit of FMC Rochester for treatment.[3]

Although Koski wishes to avoid treatment and remain an outpatient in the mental health unit, "prisoners do not have a due process right to remain in isolation or segregation to avoid a particular form of treatment, such as the forcible administration of psychotropic medications." Horne, 955 F. Supp. at 1148-49. This principle applies with equal force, where, as here, the evidence demonstrates that the inmate

---

[3] The Court notes that Koski benefitted from similar treatment in 1996, when he was sent to FMC Rochester to restore his competence. (Ex. D at MR_0000342.) After receiving treatment, Koski was found competent. (Ex. B.)

6

cannot function in the general population of a mental health unit.

Based on the records and testimony introduced at the October 31, 2005, hearing, the Court concurs with the opinions expressed by Dr. Sigurdson. Mr. Koski is unable to function on the outpatient hospital unit in a meaningful way due to the severe impairment caused by his delusional disorder. Treatment is necessary to permit him to meaningfully participate in the activities available to him in the mental health unit at FMC Rochester. The Court concludes, therefore, that the United State has met its burden of proving that Koski is in need of custody for care and treatment.

### C.   FMC Rochester is a Suitable Facility

As in other cases, the Court finds that FMC Rochester is a suitable facility for Koski to receive care or treatment. *See* Horne, 955 F.Supp. at 1150; United States v. Wedington, 2005 WL 1270915 *5 (D.Minn., May 26, 2005); Washington, 2005 WL 1277778 at *4. Dr. Sigurdson testified that in the inpatient unit of FMC Rochester's mental health hospital, Respondent could get the treatment that he needs. The proposed involuntary treatment will likely benefit Koski and FMC Rochester is a suitable facility to provide that treatment. The Court finds that FMC Rochester is a suitable facility.

Petitioner has established, by a preponderance of the evidence, that Koski is suffering from a mental disease, that he is in need of custody for the care and treatment of that disease, and that the proposed facility is a suitable facility to provide such custody and treatment. Therefore, the Court recommends that Petitioner's petition be granted.

### RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [#1] be granted and that Respondent be committed to the custody of the United States Attorney General, who may involuntarily treat and hospitalize

Respondent at FMC Rochester.

Dated: November 9, 2005                                                    *s/ Arthur J. Boylan*
                                                                          ARTHUR J. BOYLAN
                                                                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 28, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 28, 2005**, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.